Good morning. May it please the Court, Chris Sullivan, Diamond McCarthy, on behalf of Alan Diamond, the Chapter 7 trustee for Howard LLP. Your Honors, I'd like to reserve five or six minutes for rebuttal, please. As one of the central issues in this case, just ten days after this case, we finished the briefing in this case, another panel of the Ninth Circuit certified one of the central defenses that law firm defendants are raising here to the California Supreme Court for decision. That was the question of whether or not the unfinished business rule gives rise to a property right under California state law that supports the application of the unfinished business rule as it's been applied in California. Just last Monday, the California Supreme Court notified the parties in the Heller case that oral argument is set for December 7th. I think that the impacts of the Ninth Circuit decision in Heller underscores the key error of the district court below here, which is that these fundamentally are questions of state law, of state partnership law, and the interpretation of RUPA, as well as another issue that is unique to states, which is the governing of the lawyers that practice within those states. The court below erred by substituting its own views for the express holdings of the District of Columbia's highest court of appeals in Beckman and Young, as also applied by a D.C. federal court in Robinson v. Nussbaum. Thus, unlike California, here we do have the state's highest court, which is spoken unequivocally in the Beckman case. In the Beckman case, the court unequivocally said, pending cases are uncompleted transactions winding up after dissolution and are therefore assets of the partnership subject to post-dissolution. This is the expressed language from the Beckman v. Farmer case. As a result, there is a right to recover the profits on behalf of the dissolving partnership. The district court below tried to skirt this holding by creating a new rule that where a dissolving firm's partners take the unfinished business matters to a new firm and the clients execute new engagement contracts, it becomes a substantively new matter. But Beckman itself relied on five cases that reject the premise that something so easily accomplished as having the clients enter into a new retainer agreement is sufficient to discharge the fiduciary duties of the partner to account for the profits to the dissolving firm. Those cases are Ellersbee, Resnick, Jewell, Rosenfeld, and Frates. These cases themselves all evolved from longstanding principles of partnership that emanate from the United States Supreme Court's decision in Denver v. Roan back in 1878. The rule that a dissolving partnership is entitled to recover the profits from the unfinished business that are generated by the work of its partners who are representing the partnership in dissolution is an important component of the very fiduciary duty that runs between both partners and runs between lawyers. These longstanding common law principles were codified in RUPA section 404b1, which expressly outlines that a partner who is winding up the unfinished business of the dissolving firm must account to the partnership for the profits derived from the winding up of the partnership business. Now, Counsel, Judge Gould, if I could interject a question. Please, Judge Gould. It seems I understand that principle pretty clearly if what we're talking about are contingent fee agreements that somebody's been working on for quite some time and then the firm breaks up and they take that agreement to a new firm. But I don't quite understand how that principle from the prior DC cases would clearly apply to hourly work. So that's my main question. And also, I thought that the district court here was quite impressed by both an opinion of Judge Breyer relating to a district court opinion relating to a federal case about Heller-Ehrman and also by a Second Circuit certification to the New York Court of Appeals and what they said there. So if you could address those two issues, one, the significance of hourly work, and second, how you view those two cases on which the district court gave significant reliance, I'd appreciate it. Yes, Your Honor. First is to hourly fee cases. The district court decision from the District of Columbia and Robinson v. Nussbaum persuasively looked at the question of whether Beckman and Young should be applied in the hourly fee case as well as the contingency fee case. It went through the fairness arguments and it determined that under DC law, this is how the DC Court of Appeals would rule. And it was on solid footing because a number of other states adopt the unfinished business rule and apply it to hourly cases, such as California, which was the case of do represent an investment of the law firm that should be respected and gives them a continuing property interest. But also with respect to hourly matters, there's tremendous investments of the partners in a firm to get the hourly fee matters that are also the lifeblood of the partnership. It's a product of all of the partners' efforts. It's not just something that comes into the door. So the rights and the right to recover, Your Honor, the ongoing profits, it should be applied between hourly and contingency fees. Okay, but in the modern legal world, I could be wrong because it's been a while since I've been practicing, but at least at the end of the last century when I was still practicing, the general counsels of most major companies were taking the position that they weren't hiring, you know, law firms to be a law firm for all matters. And the relationship of the client would depend on each individual matter, each new matter that came up. And if that's still the case, then I don't see how there's a any matter in the future to the end of time, I guess. Well, Your Honor, take, for example, a case in which the partnership has invested in marketing and developing a particular practice area. And other partners have sacrificed because they've paid for the marketing and development efforts of particular partners. And they're able to generate a long-term engagement. Maybe it's a major piece of litigation. And when that litigation is unfolding and all of the partners and associates and people who make up the law firm are working to do good work for that client, and that matter is going to continue into the future, that's a valuable partnership asset. It's how law firms operate. There's a common saying that law firms operate with elevator assets because if the people leave, the both to contingency cases and to hourly fee cases so that the partnership, the dissolving partnership can recoup the benefits that have been invested into those matters. And it's important for the legal profession to be able to pay the creditors, to be able to pay the debts that the partnership owes. So I believe in the case law supports the application of the unfinished business rules to both of those cases. And ultimately, it is a question of state law. I mean, moving on to the Heller case, Judge Gould. Well, the Heller case is now superseded by the Ninth Circuit's opinion in Heller in which they went through exhaustively the development of the unfinished business rule and traced it back to its roots in the 1800s. And so what they felt was the right thing to do was to certify these key questions of state law to the California Supreme Court because they're fundamental principles of state partnership law and fundamental principles with how you govern lawyers. So here is it your position primarily that we should not reverse the district court but certify the issue to the D.C. Court of Appeals? On balance, Your Honor, yes. I don't believe that the district court can be upheld because it substituted its own judgment for the judgment of the highest court of appeals in the District of Columbia because it's running headlong into Beckman and Young. Unlike in the Heller situation where the California Supreme Court had not spoken on the central issue, it was the California Court of Appeals that spoke in favor of the highest court of D.C. So I don't believe that the district court could be upheld without certifying the question. That is why... But you're not asking us to reverse the district court without certifying the question? Or are you asking us to do that? On balance, I think that the Heller decision combined with the Second Circuit's decision to certify the question in Thielen provide important guidance that weigh in favor of certification as opposed to reversal. There was another reason that the Heller, the Ninth Circuit panel in Heller felt it was impacted the application of the Unfinished Business Rule. Now, I believe as a matter of statutory interpretation that it didn't, that it, in fact, reinforced the application of the Unfinished Business Rule because, number one, it carried it forward in spite of a legion of case law from many different states that had applied it by carrying it forward in 401, 404B1, but also it refined it in 401H. It said a partner in a dissolving firm is not entitled to any remuneration except for reasonable compensation. So as a matter of statutory interpretation, I believe that would be the correct result. But when the Ninth Circuit panel has spoken so decisively on the issue, it has to be taken into account, as well as the Second Circuit's referral in the Thielen matter. So I guess just to put a finer point on it, we wouldn't reverse and certify. We would just certify and see what the Court of Appeals for the D.C. Circuit does. Yes, that's certainly what the panel did in the Heller case, Your Honor. And so what, I guess, how would you formulate the question then that we would certify? I would formulate the question as whether or not in the circumstances before the court that were identified as distinguishing factors by the district court, so where you have unfinished business matters that are being completed by a dissolving firm, whether the holdings of Beckman and Young apply equally under RUPA and under the circumstances that are presented in this case. There's also the question of whether there's a pre-dissolution right to account, which is an issue of statutory interpretation, as well, but of which there isn't as developed a body of case law. Of course, there's the Buckley-Towers opinion and the Bankruptcy Court's decision below, but that would also be a question. I mean, if the first question were certified to the District of Columbia Court of Appeals, then it would seem appropriate to certify the second question as well. Do you want to preserve the balance of your time? Yes, thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. I'm Shai Dvoretsky with Jones Day on behalf of the law firm Defendants. Let me begin with the certification question, because much of Mr. Sullivan's time was spent discussing that. If the Court chooses to certify the – certify to the District of Columbia Court of Appeals, the question that we would propose focuses on the property question, because Mr. Sullivan mentioned that there are various State law issues at play here. At bottom, though, this is a question of whether the dissolved firm has a property interest in the profits earned by the law firm Defendants. So more specifically, I would propose that the question ought to be whether a law firm that dissolves and liquidates in bankruptcy has a property right under D.C. law to profits earned by third-party law firms on hourly rate matters that clients chose those firms to handle when the defunct firm could no longer do so. That question captures both the State law property question that's at issue and the facts and circumstances of this case that are relevant to resolving that issue. Is that similar to the question certified in Heller? I mean, it has some different nuances toward the end, but as I heard Mr. Sullivan reference that certified question to the California Supreme Court, it seemed to focus on the unfinished – whether the unfinished business rule creates a property right. And so that's your focus there? Is this creating a property right in these circumstances where you've got hourly rate cases? You have matters that cannot be completed by the dissolving business. Judge Friedenthal, our focus is on whether there is a property right to the future profits. I would not phrase it as whether the unfinished business rule creates a property right because the unfinished business rule is a rule of partnership law. Partnership law, as the New York Court of Appeals recognized in Thielen, doesn't create property rights. It divides up – it speaks to how partners will divide up property rights. So if I were submitting the question for your consideration, I wouldn't phrase it in terms of whether the unfinished business rule creates a property right, but rather whether the defunct law – defunct firm has a matter of State law has such a property right. Counsel, Judge Gould, if I could interject this question. Yes, Your Honor. If the panel decides it is going to seriously consider certification, which seems the panel is probably going to be somewhat interested in that, the panel can preliminarily, before deciding, send an order to both sides of this case to let you and your friend on the other side state in writing precisely how you would frame questions for certification and reasons. So from your perspective, would that work to let you clearly articulate what issues you think should be certified if we do that? Yes, absolutely, Your Honor. If the Court were to resolve the case without certifying, the central principle that resolves the case under D.C. law is that law firms are entitled to be paid only for the work that clients allow them to do, not for someone else's work, not for marketing activities to get a case in the first place, but only for the work that clients allow them to do. Any other rule would severely threaten the access of clients to the lawyers of their choice because it would deny profits to third-party firms like the defendants here that have no obligation to take on a matter in the first place. That paramount concern for the rights and interests of clients is what underlies the New York Court of Appeals decision in Thielen, which is the only decision to consider and to reject claims like the trustees here. Those same principles are reflected in D.C. law and indeed in a recent D.C. ethics opinion, Opinion 368, that expressly embraces the reasoning and the considerations in Thielen. D.C. partnership law is not to the contrary. RUPA Section 404, as codified in D.C. law, creates a duty to account only for partnership business. When a firm like Howery dissolves, when its partners disperse and join new firms, and when the clients end their relationship with Howery and hire the new firms to represent them, Howery's partnership business at that point is over. The partnership business is the partnership business of the new firms who perform the work, and there's no duty to account by those third-party firms to Howery, with which those firms never had any fiduciary relationship, for the third-party firm's own partnership business. The Beckman case is not to the contrary. That was a very different case both legally and factually for a number of reasons. In Beckman, first of all, only contingent fees were at issue. I think it's footnote 26 of that case that makes clear that hourly representations were not at issue. And so the old firm had not been paid for the work that it did on a case. Two partners of that firm left and formed an offshoot firm, a subset consisting only of partners of the old firm, and that subset firm did the same work under the same retainer agreements as the old firm was doing. The only thing that changed is that the partners who left the old firm cut off the rights of their former partner. This case is very different in each of those critical respects. First, as I mentioned, no contingent fee matters are at issue here. We're only talking about hourly rate representations and Howery was paid for all of the hourly work that it did. Second, this is not a case where there is any successor firm to Howery consisting of a subset of former Howery partners. Howery was imploding. Its partners dissipated and went to different firms and they joined bona fide preexisting third-party firms. Those third-party firms, in turn, brought their own capital, their own resources, their own expertise, their own client services philosophies to bear on new representations. In that situation, this is a fundamentally different case than the sort of unfairness that was at stake in Beckman. And in this situation, the relevant precedent that the D.C. Court of Appeals would follow is Thielen. And as we discussed earlier, if the court is inclined to certify, we, of course, welcome that. But a Federal court like this is also able to predict what the D.C. Court of Appeals would do if faced with the question. And given the reasoning in Thielen that is reflected in D.C. law governing lawyers that is not inconsistent with Beckman, the D.C. Court of Appeals would follow that Thielen decision on facts like these. In addition, the Beckman case is also an apposite for legal reasons beyond just the factual distinctions because it was decided under the Uniform Partnership Act rather than the Revised Uniform Partnership Act. And there are two critical differences in the Revised Uniform Partnership Act. One is that it gives partners the immediate freedom to compete upon dissociating from a former firm. And so to the extent Beckman and Jewell and cases of that sort were based on the notion that a partner could not compete with his former firm during the wind-up phase, RUPA does away with that restriction and allows partners to compete in that way. Second of all, the premise of Beckman and Jewell that it cited was that in winding up the old firm's business, a surviving partner could not receive any additional compensation beyond what he was entitled to under the old firm's partnership agreement. RUPA specifically does away with that rule and allows the partner who is winding up the old firm's business to receive reasonable compensation for that work, which means all of the compensation that is attributable to that partner's skill and effort as opposed to the old firm's capital is reasonable compensation that the partner gets to keep after leaving the old firm. It's telling that no D.C. case involving RUPA cites Beckman, Young, or Robinson for their unfinished business holdings. Those are cases that were decided under UPA but haven't been followed on these unfinished business issues under RUPA. With respect to the trustee's pre-dissolution claims, this would really be a sea change in the law governing lawyers. There is no D.C. authority and no published authority anywhere holding what I think the trustee wants the court to hold, which is that the first firm that touches a matter, even if it works on it for a day, has a perpetual right to the income from that case no matter what firm handles it in the future, as long as that firm is somehow associated with the partner that started the case at the original firm. There's no published decision anywhere, no D.C. decision holds that, and it's, as Judge Donato recognized, nobody thinks this in the real world. This is contrary to how legal practice operates. It's also not supported by the text of RUPA. The trustee relies on a provision of RUPA that says that a partner has a duty to account after dissociating for matters arising and events occurring before the dissociation. But the duty to account only applies to the old firm's partnership business. And again, as I explained earlier, once the client ends its relationship with the old firm and hires a new one, the old firm's partnership business is wound up. If the court has no further questions either about certification or about the merits, I'll cede the rest of my time. Thank you. Thank you. If the panel chooses to certify the question, I certainly believe Judge Gould's suggestion is an excellent one that we present the Court with our version of the questions. With respect to the question presented to be certified by the defendants here, they're mixing two very distinct concepts. They're mixing the concept of the State law of partnership rights with the rights that exist under the bankruptcy law and the fraudulent transfer law. So the key question for the State courts is what are the State law of partnership rights that govern? It's a matter of Federal law with respect to how the fraudulent transfer law under the Federal statute should be applied in that scenario. They're two very different things, and that bears its critical to analyzing the question because they're just two separate concepts. With respect to the Thielen case, there's a couple of very important points. Number one, the highest court in New York is directly at odds with the highest court in the District of Columbia because they come out differently on the question of whether there's a property right with respect to the unfinished business. The District Court of Appeals in the District of Columbia clearly says these are assets of the dissolving partnership that can't be reconciled with Thielen. Thielen itself is in the minority of State law jurisdictions. Even after Thielen was decided, the Colorado Supreme Court in Lafon v. Sweeney decided contrary to Thielen when it held that with respect to contingency fees, there is a property interest that the dissolving firm has. So in Thielen, the New York Court of Appeals decided to apply its rules with respect to both contingency and hourly cases. Colorado Supreme Court went a different way. That illustrates that Thielen isn't controlling. Its reasoning is unique to considerations of New York law. It's also important to recognize that this isn't a question about clients and the clients' relationships to the firm. It's a question about the rights of partners as between themselves. The rights to partners and whether or not they have an entitlement to a certain amount of the profit is different from what happens with the client choice arguments. So the client choice arguments are overblown because once the client pays the fees to the firm, it's a matter of the partnership principles and the partnership itself to decide what happens to those fees. The key aspects here and the fact that the unfinished business rule has existed for as long as it has and it's been consistently applied and it's been wrestled with by a number of courts emphasizes the importance to make the key decisions regarding the application of partnership law in the right context with a perspective of the overview of how this applies to all lawyers and all law firms, be they big or small. And there has been a lot of attention that's been given to some of these high-profile bankruptcy cases, but the partnership principles apply with respect to small firms, large firms, medium firms. And when lawyers govern lawyers, they have a responsibility to apply those rules fairly. And with the perspective that if partnership law applies equally to law firm partnerships as to other firms, as it does here, that should be respected and the public has a right to be treated fairly because there's creditors here whose interests are very important that have to be taken into account in this circumstance. So unless the Court has further questions, I would submit it. Thank you. I have no questions here. Thank you both very much, Mr. Sullivan and Mr. Dvorsky, for your fine arguments here this morning. The matter of Alan Diamond v. Hogan LaBelle's US LLP is now submitted and we are adjourned. Thank you. Thank you.
judges: Gould, Murguia, Freudenthal